**George C. PUCKETT, Jr. and Martha Sue Puckett, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. A. H–98–1788.**

United States District Court, S.D. Texas, Houston Division.

June 23, 1999.

Percy L Isgitt, Houston, TX, for George C Puckett, Jr, Martha Sue Puckett.

Ralph F Shilling, Jr, Dept. of Justice, Tax Division, Dallas, TX, for Commissioner of the Internal Revenue Service.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

Plaintiffs, George C. Puckett, Jr. and Martha Sue Puckett (the "Pucketts"), seek a refund of federal income taxes they paid for tax years 1985 through 1988. Defendant, the United States, moves to dismiss under Rule 12(b)(6) based on the *res judicata* effect of the Pucketts' prior bankruptcy proceeding. Defendant asserts that the bankruptcy court's 1991 order confirming plaintiffs' chapter 11 plan of reorganization, which addressed the taxes due for the

years at issue here, precludes this refund suit. Plaintiffs have responded on the merits and have moved under Rule 12(f) to strike the motion to dismiss as untimely.

Based on a careful review of the motions and response, the pleadings, the parties' briefs and submissions, and the applicable law, this court DENIES plaintiffs' motion to strike and GRANTS the United States' motion to dismiss, for the reasons set out below.

## I. Factual Background

Plaintiffs owned and operated a business of buying and selling used automobiles, as a sole proprietorship. In July 1987, plaintiffs filed for bankruptcy under chapter 11 of the Bankruptcy Code. When they filed their bankruptcy petition, plaintiffs had received extensions for, but had not filed, their federal income tax returns for 1985 and 1986.

In 1990, while the bankruptcy proceeding was pending, the Internal Revenue Service began to examine the Pucketts' 1985 and 1986 tax returns. On September 11, 1990, the IRS filed a proof of claim in the Pucketts' bankruptcy case. The IRS asserted that plaintiffs owed prepetition tax debts for the tax years 1985 and 1986; in amended proofs of claim, the IRS also asserted postpetition tax liabilities for the tax years 1987 and 1988. The IRS also filed objections to the Pucketts' proposed plan of reorganization. In a final amended proof of claim, filed on February 19, 1991, the IRS asserted that plaintiffs owed a prepetition tax debt of $319,527.15 and administrative costs for postpetition taxes in the amount of $201,533.97. (Docket Entry No. 11, Ex. 7).

Plaintiffs filed a First Amended Plan of Reorganization and an amended disclosure statement in the bankruptcy court on March 1, 1991. (Docket Entry No. 11, Ex. 8A–8B). In the amended statement and plan, the plaintiffs set out the IRS's tax claims without objection. The disclosure statement and plan provided for the payment of prepetition tax liability as a priority claim in the amount of $158,879.67; for the payment of penalties and interest on penalties as a general unsecured claim in the amount of $160,647.48; and for the payment of postpetition taxes in the amount of $190,356.10, under sections 503 and 1129(a)(9)(A) of the Bankruptcy Code. (Docket Entry No. 12, p. 5, ¶ 13). The IRS dropped its claim for 1989 estimated income tax. *Id.*

Following a hearing, the bankruptcy court confirmed the plan on April 19, 1991. (Docket entry No. 11, Ex. 9). The Order Confirming Plan contained the following provisions:

> Prior to confirmation, the Debtors and the Internal Revenue Service entered into certain stipulations seeking to clarify, modify and amend provisions of the Plan, which modifications, clarification, and amendments do not constitute substantive alterations or modifications justifying notice of the proposed Plan.

*Id.* at ¶ 13.

> TO THE EXTENT THAT THIS CLASS 3 CLAIM IS NOT PAID IN FULL, THE INTERNAL REVENUE SERVICE MAY TAKE SUCH ACTIONS AS ARE AUTHORIZED BY THE INTERNAL REVENUE CODE TO ASSESS AND COLLECT ANY UNPAID BALANCE.... THE INTERNAL REVENUE SERVICE MAY TAKE SUCH ACTIONS AS ARE AUTHORIZED BY THE INTERNAL REVENUE CODE TO ASSESS AND COLLECT ALL TAXES AND PENALTIES AND THE INTEREST OWING THEREON WHICH ARE ATTRIBUTABLE TO THE DEBTORS' PRE–PETITION FEDERAL INCOME TAXES AND FEDERAL WITHHOLDING TAXES AND INCLUDED IN THIS PLAN AS A CLASS 7 CLAIM.

*Id.*

A Postconfirmation Order and Notice entered May 1, 1991, set a deadline for filing objections to claims. (Docket Entry No. 11, Ex. 10). Plaintiffs filed no objections to the IRS's claims.

In June 1992, plaintiffs delivered two cashier's checks to the IRS, one for $225,-564.90, for administrative claims, and one for $175,000, for priority claims. (Docket Entry No. 12, p. 8, ¶ 27). Based on this payment, the IRS did not pursue its objection to the Pucketts' attorney fee application in the bankruptcy court, which was the IRS filed before it received payment. *Id.*

Two years later, in June 1994, plaintiffs filed four separate administrative claims for refund based on the treatment of business expenses and net operating losses relating to Puckett Auto Sales. *Id.* at ¶ 28. Plaintiffs asserted a claim for refund of 1985 taxes based primarily on a 1984 net operating loss; a claim for refund of 1986 taxes based on changes to amounts claimed for business expenses; a claim for refund of 1987 taxes based on the use of a 1989 net operating loss carryback; and a claim for refund of 1988 taxes based in part on the use of a 1989 net operating loss carryback and in part on an adjustment to schedule C business expenses. *Id.* at p. 8–9, ¶¶ 30–33.

In March 1998, the IRS refused the refund claims. This lawsuit resulted. On August 27, 1998, the United States filed its answer, raising *res judicata,* or claim preclusion, as an affirmative defense. (Docket Entry No. 5). On March 1, 1999, the United States filed a Rule 12(b)(6) motion to dismiss. (Docket Entry No. 12). The United States asserts that plaintiffs had a full and fair opportunity to litigate their tax liability for the years at issue in the bankruptcy court and are now barred under claim from relitigating such claims. On March 22, 1999, plaintiffs filed a Rule 12(f) motion to strike the United States' motion to dismiss because it was not filed prior to, or simultaneously with, the answer. (Docket Entry No. 15). Plaintiffs also filed a response on the merits. (Docket Entry No. 14).

The procedural and substantive issues are analyzed in turn.

## II. The Rule 12(f) Motion to Strike

A motion to strike under Rule 12(f) serves to eliminate redundant, immaterial, impertinent, or scandalous matter in pleadings. It is the primary mechanism for objecting to an insufficient defense. *See Plaza Assoc., Inc. v. Kolb Dev., Inc.,* No. Civ. A. 91–703, 1992 WL 78384 at *1 (E.D.La. April 9, 1992), *order vacated on other grounds by* No. Civ. A. 91–703, 1993 WL 165697 (E.D.La. May 10, 1993); *see also* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380, at 644 (1990). A plaintiff moving to strike a portion of an answer must show that the challenged portion is "so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380, at 650.

Some courts have refused to consider a Rule 12(f) motion to strike a motion to dismiss, noting that "a Rule 12(f) motion to strike only concerns striking matters from pleadings and a motion to dismiss is not a pleading." *O'Connor v. State of Nev.,* 507 F.Supp. 546, 548 (D.Nev.1981) (citing *Hanraty v. Ostertag,* 470 F.2d 1096 (10th Cir. 1972), *aff'd by* 686 F.2d 749 (9th Cir.1982); *see also Breier v. Northern Cal. Bowling Proprietors' Ass'n,* 316 F.2d 787, 789 (9th Cir.1963)). Other courts take a less stringent approach. *See, e.g., Rizzo v. Tyler,* 438 F.Supp. 895, n. 1 (S.D.N.Y.1977) (considering a motion to strike an untimely filed motion to dismiss on the merits); *Monroe v. Board of Ed. of Town of Wolcott,* 65 F.R.D. 641 (D.C.Conn.1975) (although a motion to strike is not a strictly proper method of challenging affidavits, the court considered the basis of the challenge to the propriety of the affidavits.). Generally, motions to strike are viewed with disfavor, as a potentially dilatory tactic. *See* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380, at 647. "Motions to strike

affirmative defenses are not favored by the court, and before such a motion can be granted, the court must be convinced that there are no questions of fact and that any questions of law are clear and not in dispute, and that under no set of circumstances can the defense succeed." *Soanes v. Baltimore & O.R. Co.*, 89 F.R.D. 430, 431 n. 1 (E.D.N.Y.1981).

■ Considering the Pucketts' motion to strike on the merits, this court finds it unpersuasive. Under Rule 12(b)(6), a motion raising the defense of failure to state a claim upon which relief may be granted must be made before the service of a responsive pleading. Rule 12(h)(2) provides, however, that the defense may be raised as late as trial. *See* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 299–300. "Technically, 'a post-answer Rule 12(b)(6) motion is untimely and some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the failure to state a claim for relief.'" *Delta Truck & Tractor, Inc. v. Navistar International Transp. Corp.*, 833 F.Supp. 587, 588 (W.D.La.1993) (citing 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 299–300 (1990)). However, courts do not mechanically or routinely deny any motion made after a responsive pleading as untimely. If the defendant has previously included in the answer the defense raised in the motion, thereby giving notice, then courts generally allow Rule 12(b)(6) motions filed after the answer. In this context, the Rule 12(b)(6) motion becomes tantamount to a preliminary hearing under Rule 12(d).[1] *See* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1361, at 445–446. The courts consider Rule 12(b)(6) motions to dismiss filed after a responsive pleading, not as a Rule 12(b) motion, but as a Rule 12(c) motion for judgment on the pleadings. *See Delta Truck & Tractor*, 833 F.Supp. at 588; *see also* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 301. However, a court applies the same standards to such a motion that are applied to motions timely filed under Rule 12(b)(6). *See Delta Truck & Tractor*, 833 F.Supp. at 588; *see also* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 515–516.

In the present case, the United States filed its Rule 12(b)(6) motion after filing its answer to plaintiffs' complaint. However, the United States previously raised *res judicata* as an affirmative defense in its answer to plaintiffs' original complaint. This court may treat the United States' Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings and hear such motion under Rule 12(d). *See* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1361 at 445–446. The court will apply the same standard that applies under Rule 12(b)(6). *See Delta Truck & Tractor*, 833 F.Supp. at 588; *Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc.*, 839 F.Supp. 275, 278 n. 1 (D.Vt.1993); *Warner Co. v. Brann & Stuart Co.*, 198 F.Supp. 634, 636 (E.D.Pa.1961).

Plaintiffs' motion to strike the motion to dismiss as untimely is without merit. This court DENIES plaintiffs' motion to strike the United States' motion to dismiss.

### III. The Motion to Dismiss

#### A. The Applicable Legal Standards

Under Rule 12(b)(6), "a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81

---

**1.** Rule 12(d) provides that "upon application of any party, any of the defenses enumerated in Rule 12(b) that have been raised either by motion or in the answer or any of these defenses raised on a Rule 12(c) motion for judgment on the pleadings must be heard and determined, unless the court orders their consideration deferred until trial". *See* 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1373, at 547.

L.Ed.2d 59 (1984); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Piotrowski v. City of Houston,* 51 F.3d 512, 514 (5th Cir.1995). In a motion to dismiss, the allegations of the complaint must be accepted as true, *see Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), and the complaint construed favorably to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint need not outline all the elements of a claim, but it must be possible to draw an inference that these elements exist. *See Walker v. South Cent. Bell Telephone Co.,* 904 F.2d 275, 277 (5th Cir.1990).

■ The Fifth Circuit has held that *res judicata,* or claim preclusion, bars a subsequent action if the following requirements are met: (1) the parties of the two suits are identical; (2) a final judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same cause of action is involved in both suits. *See, e.g., Agrilectric Power Partners, Ltd. v. General Elec. Co.,* 20 F.3d 663, 664–665 (5th Cir.1994); *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir.1983) (en banc) (citing *Stevenson v. International Paper Co.,* 516 F.2d 103, 108 (5th Cir.1975)); *Lee v. Kroger Co.,* 901 F.Supp. 1218, 1222 (S.D.Tex. 1995).

### B. Claim Preclusion and the Motion to Dismiss

The United States asserts that under the doctrine of claim preclusion, this refund action for the tax years 1985–1988 is barred because the bankruptcy court's order confirming the Amended Plan of Reorganization conclusively determined plaintiffs' tax liability for those years; plaintiffs filed no objections; and plaintiffs paid the taxes.

The parties do not dispute two of the elements of claim preclusion: the identity of the parties or the fact that the bankruptcy court was of competent jurisdiction. Plaintiffs do dispute that the bankruptcy court entered a final judgment on the merits and that the same cause of action is involved in both suits.

The IRS argues that both case law and statutory authority make the order confirming the amended plan of reorganization a final judgment in the bankruptcy proceeding. Section 1141(a) of the Bankruptcy Code provides:

> Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

*See also Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 480 (6th Cir.1992)("Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings."); *Miller v. Meinhard–Commercial Corporation,* 462 F.2d 358, 359 (5th Cir.1972)("An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court ... and any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine of *res judicata.*")(citing *Stoll v. Gottlieb,* 305 U.S. 165, 170–171, 59 S.Ct. 134, 83 L.Ed. 104 (1938)); *Cromwell v. Sac County,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876); *Eubanks v. FDIC,* 977 F.2d 166 (5th Cir.1992); *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir. 1987); *In re Constructors of Fla., Inc.,* 349 F.2d 595 (5th Cir.1965).

Plaintiffs argue that there is an exception to this general rule, one that carves out a protective niche for tax claims. Plaintiffs assert that their refund claims arise from "certain non-dischargeable tax debts" in their chapter 11 bankruptcy case

and are not barred by *res judicata*. (Docket Entry No. 14, p. 2, ¶ 3). Plaintiffs rely on *In re Taylor*, 132 F.3d 256 (5th Cir.1998). In *Taylor*, the Fifth Circuit held that the IRS could pursue a claim for a penalty under 26 U.S.C. § 6672 outside the bankruptcy forum, even though the bankruptcy court had entered an order confirming the taxpayer's chapter 11 reorganization plan with a provision stating that the taxpayer had no tax liability. *Taylor*, 132 F.3d at 263. The Pucketts assert that the Fifth Circuit's statement in *Taylor*, that a chapter 11 order confirming a plan of reorganization does not itself invoke the tax determination process, should be interpreted to mean that both the IRS and taxpayers may pursue tax claims outside of the bankruptcy forum. Plaintiffs argue that "[i]t stands to reason, that if the United States may pursue certain tax claims outside the bankruptcy arena, then [plaintiffs] may certainly offset allowable deductions under the Internal Revenue Code against such claims, also outside the protection of the bankruptcy case." (Docket Entry No. 14, p. 4, ¶ 18).

Plaintiffs both misapply the facts of *Taylor* and skew the policy on which it is based. In *Taylor*, the taxpayer/debtor filed a disclosure statement and proposed plan of reorganization in the bankruptcy court, stating that he owed no tax liability. The IRS asserted a claim for unpaid personal income taxes. Taylor objected, and the IRS subsequently withdrew its claim. However, the IRS asserted no claim in the bankruptcy proceeding for any other tax liability, including taxes under section 6672. The bankruptcy court approved Taylor's plan of reorganization. The IRS received a copy of the plan, but did not participate in the confirmation hearing and did not appeal the confirmation order. A few months later, the IRS began proceedings to assess penalties under section 6672. *Taylor*, 132 F.3d at 259. The Fifth Circuit held that the order confirming the plan did not bar the IRS from collecting the penalty it sought. *Id.* at 259–260. The court emphasized that the "IRS has the option to remain outside the bankruptcy proceed-ings and preserve a debt for a § 6672 penalty without filing a claim in Chapter 11." *Id.* at 261. Section 1141(d)(2) "saves debts excepted from discharge under § 523 from the general discharge of all pre-existing debts given to the debtor by § 1141(d)(1)....The debts excepted from discharge by § 523 include taxes described in § 507(a)(8) 'whether or not a claim for such tax was filed or allowed.'" *Id.* The Fifth Circuit concluded that the IRS's claim for the section 6672 penalty would survive bankruptcy even if the IRS filed no proof of claim in the bankruptcy court. The IRS was free, as a holder of non-dischargeable debt, to pursue the debtor outside bankruptcy.

The Fifth Circuit emphasized that the taxpayer, Taylor, could have asked the bankruptcy court to determine the amount of the penalty at issue. *Id.* at 262. Under 11 U.S.C. § 505, either a debtor or the IRS may file a motion asking the bankruptcy court to determine the amount of contested tax liability. Procedurally, the debtor or the IRS may make a motion under Bankruptcy Rule 9014, or the debtor may file a proof of claim on behalf of the IRS and object to it. *See* FED. R. BANKR. P. 9014; 11 U.S.C. § 501(c). Taylor used neither mechanism to raise the tax liability in the bankruptcy court. Instead, Taylor failed to invoke the power of the bankruptcy court to determine the tax penalty at issue. Taylor's self-serving statement on his schedules, disclosure statement, and plan, that he did not owe any tax liabilities or penalty to the IRS, did not make the bankruptcy court's order confirming the plan *res judicata* of the tax penalty. The fact that the IRS had filed a proof of claim for income taxes, then abandoned it, did not affect the IRS's ability to proceed against Taylor to collect a tax penalty, which is a separate debt and separate type of tax. The court concluded that the IRS could continue to collect the penalty outside the bankruptcy court.

In this case, by contrast to *Taylor*, the IRS did file and pursue proofs of claim in

the bankruptcy court for the taxes at issue. In *Taylor*, the IRS did not do so. In this case, the IRS filed proofs of claim and objections to the debtors' proposed plan of reorganization, and plaintiffs amended their proposed plan of reorganization to provide for the payment of the taxes. In *Taylor*, neither the plaintiff nor the IRS invoked the bankruptcy court's power to determine the amount of the tax liability. In this case, both the IRS and the taxpayer/debtor litigated the tax liability in the bankruptcy court.

■ In *Taylor*, the bankruptcy court approved a plan that did not recognize any debt to the IRS; the existence and amount of the debt was not litigated. In this case, the bankruptcy court approved a plan that specifically recognized the plaintiffs' debt to the IRS for specific tax liabilities and required payment. In *Taylor*, the IRS chose not to pursue the taxpayer in the bankruptcy court, and the taxpayer did not invoke the power of the bankruptcy court to litigate the disputed tax; the IRS could pursue the tax debt outside bankruptcy. In this case, the IRS did choose to litigate the tax liability in the bankruptcy court, and the bankruptcy court resolved the tax liability in its final judgment on the merits; the Pucketts cannot relitigate the issue by pursuing this tax refund lawsuit.

Plaintiffs' policy argument does not blunt the effect of the distinctions between *Taylor* and this suit. Plaintiffs argue that it is unfair to allow the IRS the option of litigating tax liability in bankruptcy court or in a different forum, without allowing the taxpayer the same flexibility. However, the Fifth Circuit made it clear that "[t]he IRS's ability to remain outside the bankruptcy proceeding is a product of Congress's policy decision to elevate the goal of revenue collection above the debtor's interest in a fresh start after bankruptcy." *Taylor*, 132 F.3d at 263; *see also In re Fein*, 22 F.3d 631, 633 (5th Cir.1994)("Congress consciously opted to place a higher priority on revenue collection than on debtor rehabilitation or ensuring a 'fresh start.' "). Courts have refused

to bar subsequent litigation on the grounds of claim preclusion only when a secured creditor or the IRS brings a post-confirmation suit and the debtor raises claim preclusion as a defense. *See, e.g., Taylor*, 132 F.3d at 256; *Fein*, 22 F.3d 631 (finding no claim preclusion as to the IRS's priority tax claim); *In re Simmons*, 765 F.2d 547 (5th Cir.1985)(finding that a secured lien survives bankruptcy despite the plan's classification of the lien as unsecured); *see also Holywell Corp. v. Smith*, 503 U.S. 47, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992) (finding that failure to object to confirmation of plan did not preclude the United States from collecting taxes from a trustee).

As to the fourth requirement of claim preclusion, the Fifth Circuit has adopted the transactional test of the *Restatement (Second) of Torts* § 24 to determine whether "two complaints involve the same cause of action." *Eubanks v. FDIC*, 977 F.2d at 171; *Lee*, 901 F.Supp. at 1222 (citing *Agrilectric*, 20 F.3d at 665). "Under this approach, the critical issue is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts." *Agrilectric*, 20 F.3d at 665 (quoting *In re Howe*, 913 F.2d 1138, 1144 (5th Cir.1990)). "If the factual scenario of the two actions parallel, the same cause of action is involved in both." *Id.* "[T]he relevant inquiry is whether the same facts underlie the various legal theories asserted." *Lee*, 901 F.Supp. at 1222 (citing *Jarmon v. Houston Indep. Sch. Dist.*, 805 F.Supp. 24, 26 (S.D.Tex.1992)).

Plaintiffs argue that the refund claims "arise primarily from . . . deductions which were not originally included on the pre-petition and pre-confirmation tax returns." (Docket Entry No. 14, p. 2, ¶ 7). However, plaintiffs do not argue that they were prevented from including those deductions on the tax returns at issue. The fact that plaintiffs did not include the deductions on the pre-petition and post-petition tax returns does not mean that refund claims

based on the deductions arise from separate and distinct transactions. The nucleus of operative facts in both the bankruptcy case and in this case consists of the facts giving rise to the tax liability for the 1985–1988 tax years. Plaintiffs' failure to include the deductions that they now assert on the appropriate tax returns does not create new transactions that would avoid claim preclusion.

All four requirements of claim preclusion are present in this case. The parties are identical in both actions. The confirmed plan in the bankruptcy court is a final judgment on the merits rendered by a court of competent jurisdiction. The same cause of action is involved in both suits. Claim preclusion bars plaintiffs from bringing their claim for tax refunds, which were previously ruled upon in the bankruptcy court's order confirming the amended plan of reorganization. The United States' motion to dismiss is GRANTED.

## IV. Conclusion

Plaintiffs' motion to strike is DENIED. The United States' motion to dismiss is GRANTED. This case will be dismissed by separate order.