■ HOLLOW ROAD FARMS, INC., Respondent, v QUO VADIS INTERNATIONAL, LLC, et al., Appellants. [819 NYS2d 338]—

Carpinello, J. Appeal from a judgment of the Supreme Court (Doyle, J.), entered July 6, 2005 in Columbia County, upon a decision of the court in favor of plaintiff.

In 2001, defendants sought to develop a wine industry in Bulgaria and hired plaintiff as a consultant to pursue the matter. Under the terms of a one-page consulting agreement, plaintiff's president and sole shareholder, Joan Snyder, was to develop a comprehensive strategic plan for the development of the industry, identify potential financing entities and acquire financing to implement it. Snyder was to be paid $10,000 per month for six months for her services, plus out-of-pocket expenses, and the contract could be canceled on one month's notice by either party. Although the agreement was purportedly between plaintiff and defendant Quo Vadis International, LLC, defendant Ned Kennan, Quo Vadis's chair and principal shareholder, signed the contract in his individual capacity.

According to Snyder, she began billing for her services as of October 1, 2001. She was paid for services and expenses incurred during the months of October, November and December 2001. She was not paid, however, for services and expenses incurred during January 2002. Kennan first raised some concerns in early 2002 that although Snyder's work to date made "conceptual sense," it was too general for him to make any decisions. Nonetheless, he did not cancel the contract. On March 12, 2002, he informed Snyder in writing that he was no longer interested in pursuing the project. Snyder treated this correspondence as a 30-day notice of cancellation and thereafter submitted a final invoice, which included a bill for services rendered during February and March 2002.

When payment was never remitted for the outstanding sum of $33,509.25, plaintiff sued Quo Vadis and Kennan for, among other claims, breach of contract. Defendants counterclaimed for breach of contract, asserting that plaintiff was not entitled to these funds because Snyder did not perform her contractual obligations. Following a nonjury trial, plaintiff prevailed on its breach of contract claim and was awarded damages in the amount of $33,509.25. Kennan was held personally liable for this amount. This appeal ensued.

Defendants argue that plaintiff did not fulfill its obligations under the contract and that Supreme Court's finding to the contrary is against the weight of the evidence. As often noted, "[i]n reviewing a decision following a nonjury trial, this Court is empowered to independently review the weight of the evidence presented and grant judgment warranted by the record, giving

due deference to the trial court's determinations regarding witness credibility" (*Poli v Lema*, 24 AD3d 981, 983 [2005] [internal quotation marks and citations omitted]). Applying this standard to the instant case, we find no basis to disturb Supreme Court's finding that plaintiff in fact performed its contractual obligations.

Snyder provided detailed testimony outlining the work that she performed during the six-month contract period. According to her, during this time period, she educated herself on the wine industry in Bulgaria, collected written data on that industry, studied credit quality in Bulgaria, investigated and outlined the possibility of bifurcating the project into two components (sales and marketing versus real estate) and, as time went on, refined the structure of resources needed for the project and narrowed the target wineries. She also consulted with analysts and investment bankers knowledgeable in the beverage business, individuals involved in the wine industry in comparable-sized countries, Bulgarian financial institutions, wine investors in this country, wine experts who might be interested in the project and other potential investors for both components of the dual-structured venture. Moreover, she made two trips to Bulgaria during this time period and wrote monthly progress reports summarizing her work. In sum, Snyder's testimony sufficiently established plaintiff's breach of contract claim.*

Nor do we find error in Supreme Court's decision to hold Kennan personally liable for the damage award. First, Kennan signed the contract in his individual capacity and paid plaintiff with personal funds from a checking account held jointly with his wife. Moreover, an employee wholly unrelated to Quo Vadis actually signed these checks. Furthermore, Kennan conceded that Quo Vadis did not have an operating agreement, did not have an actual office (Kennan ran it out of his home) and did not have a separate telephone line (Kennan used his home telephone for Quo Vadis business and paid its bills out of personal funds). Given these particular facts and circumstances, we are satisfied that the equitable concept of piercing the corporate veil was properly applied to support recovery against Kennan personally (*see e.g. TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335, 339-340 [1998]; *Matter of Morris v New York State*

---

* As a final point on this issue, we are unpersuaded with defendants' particular claim that plaintiff is not entitled to recover under breach of contract because Snyder failed to produce five "deliverables" outlined in the contract. Notably, the contract does not specify a due date for these deliverables. To this end, Snyder testified, reasonably in our view, that it was her experience in matters of this nature that such deliverables were not due until 30 days after the end of the six-month "study" period.

*Dept. of Taxation & Fin.*, 82 NY2d 135, 141-142 [1993]; *see also Galin Partnership v Flynn*, 295 AD2d 473 [2002]; *Commercial Sites Co. v Prestige Photo Studios*, 272 AD2d 360 [2000]; *Anderson St. Realty Corp. v RHMB New Rochelle Leasing Corp.*, 243 AD2d 595 [1997]).

Defendants' remaining contentions have been reviewed and are rejected.

Cardona, P.J., Peters, Spain and Kane, JJ., concur. Ordered that the judgment is affirmed, with costs.